VENABLE LLP
Celeste M. Brecht (SBN 238604)
Email: CMBrecht@venable.com
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: (310) 229-9900
Facsimile: (310) 229-9901

VENABLE LLP
Roger A. Colaizzi (*pro hac vice*)
Email: racolaizzi@venable.com
Frank C. Cimino (*pro hac vice*)
Email: fccimino@venable.com
Meaghan H. Kent (*pro hac vice*)
Email: mhkent@venable.com
600 Massachusetts Avenue NW
Washington, DC 20001
Telephone: (202) 344-8051
Facsimile: (202) 344-8300

Attorneys for Plaintiff
UNDER ARMOUR, INC., and Non-Party
WARDELL STEPHEN CURRY II

*[Counsel for Defendants listed on signature pages]*

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION**

| | |
|---|---|
| UNDER ARMOUR, INC.,<br><br>Plaintiff,<br><br>v.<br><br>BATTLE FASHIONS, INC. and KELSEY BATTLE,<br><br>Defendants. | Civil Case No.: 3:18-mc-80117-LB<br><br>Hon. Laurel Beeler<br><br>**JOINT LETTER BRIEF RE DEFENDANTS' SUBPOENA OF NON-PARTY WARDELL STEPHEN CURRY II**<br><br>DATE: August 2, 2018<br>TIME: 11:00 a.m.<br>DEPT: Courtroom C – 15th Floor |

***REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED***

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

## I. Unresolved Issue

Kelsey Battle ("Battle") subpoenaed professional basketball player Wardell Stephen Curry II ("Curry") to testify and produce documents in *Under Armour, Inc. v. Battle Fashions, Inc., and Kelsey Battle*, No. 1:17-cv-03223-RDB (D. Md.). Joint Exhibit (J.Ex.) 5. Under Armour filed the Maryland action seeking a declaration that its products do not infringe Battle's ICAN trademark; Battle counterclaimed for trademark infringement and unfair competition. Curry objected to the Subpoena (J.Ex. 6) and moved to quash it in its entirety on July 10, 2018.

## II. Curry's Position

Battle has no legitimate basis to subpoena non-party Curry, as the discovery sought is unreasonably cumulative, duplicative, and can be obtained from another more convenient source. *See Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409 (C.D. Cal. 2014) (citing Fed. R. Civ. P. 26(b)(2)(C)) (A court "must limit the frequency or extent of discovery" if it determines that the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive). Courts take special care to protect non-parties from being improperly or unnecessarily dragged into litigation. Fed. R. Civ. P. 45(d)(2)(B)(ii); *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995) ("nonparties subject to discovery requests deserve extra protection from the courts").

Any information uniquely in Curry's possession has no apparent relevance to the claims or defenses in this trademark infringement litigation. Specifically, Battle must prove that he owns a valid, protectable trademark in "ICAN" and that Under Armour's use of the phrase "I can do all things" is a colorable imitation of the ICAN trademark and is likely to cause confusion among ordinary consumers as to the source of goods or affiliation with the mark's owner—*i.e.*, issues of fact about which Curry is not uniquely positioned to provide testimony or documents. *See, e.g., George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009).

Such information is more readily and properly obtained directly from Under Armour, which has already produced thousands of pages of documents, information, and testimony from seven witnesses related to the parties' claims and defenses. *See HDSherer LLC v. Natural*

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

*Molecular Testing Corp.*, 292 F.R.D. 305, 309 (D.S.C. 2013) (granting motion to quash subpoena of third party when information sought was in named defendant's possession). Battle has also deposed Curry's agent Jeff Austin, and Under Armour's advertising agency Droga5. The witnesses have consistently testified that [redacted]. *See, e.g.*, J.Ex. 1 at 33:15-18; J.Ex. 2 at 58:22-59:22; J.Ex. 3 at 45:10-25; 47:11-24; 65:3-5; 85:25-86:5; 95:22-96:2; J.Ex. 9 at 34:12-14; J.Ex. 13 at 97:2-7.

Any testimony from Curry regarding products using the phrase "I can do all things" is not materially relevant to the issues in this case. *See Amini*, 300 F.R.D. at 408 (quashing subpoena of actress Jane Seymour, "co-designer" of Plaintiff Amini's Hollywood Swank Bedroom Collections, in trade dress action); *Green v. Baca*, 226 F.R.D. 624, 654 (C.D. Cal. 2005) ("party issuing the subpoena must demonstrate that the information sought is *relevant and material* to the allegations and claims at issue in the proceedings") (emphasis added). The *Amini* court's order to quash is instructive, finding: (1) "it appears unlikely that evidence about her inspirations in the design process would be directly relevant to this trade dress action;" (2) the "type of information Seymour may possess about the inspiration for a given design appears marginal to the issues in this action;" (3) and "any information Seymour could likely offer would seemingly be cumulative of the testimony of Amini witnesses." 300 F.R.D. at 412. Similarly, Curry does not have personal knowledge of material facts bearing on the claims or defenses, such as ownership or validity of "ICAN" as a trademark, or whether Under Armour's use of "I can do all things" is likely to cause consumer confusion as to source or affiliation. Further, the information sought by the Subpoena that Battle claims is uniquely in Curry's possession, such as his personal communications concerning the phrase "I can do all things," is not targeted to or relevant to the claims or defenses in this action. *See, e.g., George*, 575 F.3d at 393; *US v. Theodore,* 479 F.2d 749, 753 (4th Cir. 1973). At best, all information Battle now claims only Curry can provide would be cumulative of what Battle already has or could have obtained from Under Armour and individuals/entities subpoenaed by Battle.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

Moreover, the burden on non-party Curry far outweighs Battle's need for the information sought by the Subpoena. *See Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) ("An evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party."); *WM High Yield v. O'Hanlon*, 460 F. Supp. 2d 891, 895–96 (S.D. Ind. 2006) ("non-party status is a significant factor a court must consider when assessing undue burden for the purpose of a Rule 45 motion"). As such, the Subpoena must be quashed. *See* Fed. R. Civ. P. 45(d)(3)(A)(iv). Sitting for deposition would be burdensome for Curry given his extensive commitments as a professional basketball player. *See* J.Ex. 4, ¶ 6. The Requests for Production of Documents are also overbroad, and serve as a precursor to the types of overbroad, irrelevant, duplicative deposition questions Battle would likely pursue. J.Ex. 6 (Nos. 6, 9). Additionally, certain of the requests seek documents untethered to the claims and defenses in the action. *See id.* (No. 9) (seeking communications with Curry's fans and business partners unrelated to Curry's association with Under Armour, and Curry's personal use of the phrase "I can do all things," all without any time limitations); *Theodore*, 479 F.2d at 753 (where it appears that the purpose of discovery is a "'rambling exploration' of a third party's files, it will not be enforced"). Accordingly, this Court should quash the Subpoena as unduly burdensome and unwarranted. *See Amini*, 300 F.R.D. at 411-13.

**III. Battle's Position**

A non-party seeking to avoid a deposition bears a heavy burden. *Apple Inc. v. Samsung Elecs. Co.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012). Prohibiting a deposition is "unusual," *id.*, and an "extraordinary remedy," *Hunt v. Continental Cas. Co.*, No. 13-cv-05966-HSG, 2015 WL 1518067 at *3 (N.D. Cal. Apr. 3, 2015). Battle needs Curry's testimony for at least four reasons:

First, Curry was personally involved in the design of the products that infringed Mr. Battle's trademark. Curry has a contractual [redacted], J.Ex. 7 at 86, provides feedback [redacted] J.Ex. 8, and personally [redacted], J.Ex. 9 at 80, J.Ex. 7 at 47-48. Curry's Instagram describes his role: "From the first conversation, to sketches, to design iterations, Steph is involved in every step of the way." @stephencurry30, 10/26/17, https://www.instagram.com/p/BavKT0_g6ek/.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

As one Under Armour designer understood it, a design [redacted] J.Ex. 11 at 22; J.Ex. 9 at 35. And as another designer learned, Curry's [redacted] J.Ex. 10.

One of the key issues is whether Under Armour is using I CAN DO ALL THINGS as a trademark to identify SC products or whether the use of I CAN DO ALL THINGS is purely a descriptive reference to a Bible verse or a non-trademark fair use. Moreover, since Under Armour contests whether any profits should be attributed to the use of I CAN DO ALL THINGS and disputes its importance to the design of the products, the reason the phrase is used on products and why it has been incorporated in certain ways are also key issues. As one of the key decision-makers in the design of the infringing products, Curry's testimony is essential. To the extent Curry now claims that he had no involvement, that simply creates a disputed factual issue (given the evidence above) that also requires Curry's testimony to resolve.

Second, Curry is personally involved in the marketing and promotion of the SC products, which also infringed Battle's ICAN trademark. In addition to its own efforts, Under Armour pays Curry significant amounts of money to promote its products. The contract (which the parties can provide at the hearing) specifically requires Curry to [redacted] Curry is expected to [redacted] He is also required to [redacted]

Only Curry can testify as to what he has done personally to market and promote Under Armour products and how he has used I CAN DO ALL THINGS to do so. Battle deposed Justin Brown—Under Armour's 30(b)(6) witness on marketing and advertising—and he admitted Under Armour does not know what Curry has done in this respect. J.Ex. 12.

Third, only Curry can testify as to the importance of I CAN DO ALL THINGS to his brand. Even though Under Armour has used that mark consistently on its SC line of products and in its marketing, Under Armour now claims that I CAN DO ALL THINGS is not that important, is not a part of the Curry brand, and that Curry himself does not find it that important. Only Curry can confirm or deny those positions that Under Armour has taken. The importance

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

to the brand is relevant because, among other things, it (a) informs how Under Armour has used the mark; (b) informs how consumers are likely to react to the use of I CAN DO ALL THINGS; (c) is potentially a factor in determining the amount of profits to disgorge; and (d) is a relevant fact in determining what a "lost royalty" measurement of damages should be.

Fourth, Curry's testimony is also needed for purposes of resolving Battle's objection to personal jurisdiction in Maryland. The district court has retained jurisdiction—for now—based on Under Armour's allegation that a pre-litigation letter asking Curry to preserve documents was intended to and did cause harm to Under Armour in Maryland. Only Curry can testify what his reaction was to the letter when he received it and whether it actually caused harm in Maryland.

Battle has worked hard to minimize any unnecessary burden on Curry. Given his playoff commitments, Battle agreed to defer his deposition until after the season. Now Curry claims it is too burdensome to sit for a deposition during the off-season as well. In other words, Curry is claiming that he can never be deposed during the season or after the season. Battle has already agreed to schedule the deposition around Curry's availability and to do so at a location close to him. There is no basis for refusing to provide testimony given Curry's personal involvement.

Curry also refuses to even search for or produce documents. He has provided no evidence of actual burden; nor could he, because Curry is objecting—on principle—to even see what he has. During the meet and confer, Battle agreed to a date limitation and urged Curry to simply use "reasonable" efforts to collect documents. Curry, however, claims that he should not have to produce any documents because Battle can obtain documents from others. Battle has tried but to no avail. Curry's agent has incomplete documents because he claims to delete them every week from his server. Under Armour's production is incomplete because it also employs a document destruction policy. Curry should be required to collect responsive documents.

## IV. Parties' Final Proposed Compromise

Curry does not believe any deposition should be permitted and does not agree to the production of documents. Battle is willing to take the deposition (7 hours) on a date and at a location most convenient to Curry's schedule. Battle is also willing to limit the production of documents to those created after January 1, 2013 to the present.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

Dated: July 26, 2018

VENABLE LLP

By: /s/ Celeste M. Brecht
Celeste M. Brecht (SBN 238604)
Roger A. Colaizzi (*pro hac*)
Frank C. Cimino (*pro hac*)
Meaghan H. Kent (*pro hac*)

Attorneys for Plaintiff UNDER ARMOUR, INC., and Non-Party WARDELL STEPHEN CURRY II

Dated: July 26, 2018

IRELL & MANELLA

By: /s/ Victor Jih
Morgan Chu (SBN 70446)
Victor Jih (SBN 186515)
Conor Tucker (SBN 318075)

Attorneys for Defendants BATTLE FASHIONS, INC. AND KELSEY BATTLE