UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| UNDER ARMOUR, INC., <br><br> Plaintiff, <br><br> v. <br><br> BATTLE FASHIONS, INC., et al., <br><br> Defendants. | Case No. 18-mc-80117-LB <br><br> **ORDER GRANTING MOTION TO QUASH SUBPOENA** <br><br> Re: ECF Nos. 1, 19 |

**INTRODUCTION**

This matter relates to a trademark lawsuit between plaintiff Under Armour, Inc. and defendants Battle Fashions, Inc. and Kelsey Battle pending in the District of Maryland. *Under Armour, Inc. v. Battle Fashions, Inc.*, No. 1:17-cv-03223-RDB (D. Md. filed Nov. 11, 2017) ("Maryland Action").

Under Armour sells athletic apparel and has used the phrase "I Can Do All Things" and "I Can. I Will" in connection with its products.[1] More specifically, Under Armour uses the phrase "I Can Do All Things" in connection with a line of products associated with professional basketball player Stephen Curry, who is known for writing his favorite Bible verse — "I can do all things

---

[1] Compl. – Maryland Action – ECF No. 1 at 3 (¶ 11). Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 18-mc-80117-LB

through Christ who strengthens me," Philippians 4:13 — on his shoes.[2] Mr. Battle, doing business as "Battle Fashions," sells faith-based and empowerment-oriented apparel.[3] Mr. Battle owns the trademark "ICAN" and, for more than two decades, has designed, marketed, and sold clothing and apparel bearing the mark "ICAN," and under the brand "ICAN."[4] The parties dispute whether Under Armour has violated Mr. Battle's trademark.

Mr. Battle has issued a subpoena to Mr. Curry, a non-party to the underlying lawsuit. The subpoena calls for Mr. Curry to produce documents and sit for a deposition.[5] Mr. Curry moves to quash. The court held a hearing on August 2, 2018, and now grants Mr. Curry's motion.

## BACKGROUND

Under Armour asserts that it has produced thousands of pages of documents to date to Mr. Battle and has made available seven Under Armour witnesses whom Mr. Battle has deposed.[6] In addition, Mr. Battle has deposed Mr. Curry's agent Jeff Austin and taken a Rule 30(b)(6) deposition of Under Armour's advertising agency Droga5.[7]

On June 15, 2018, Mr. Battle subpoenaed Mr. Curry to sit for a deposition. In addition, Mr. Battle's subpoenaed nine categories of documents:

1. "Documents concerning the ICAN Mark."
2. "Documents concerning Kelsey Battle, Battle Fashions, Inc., or ICAN Clothes Company."
3. "Communications between you and Under Armour regarding the ICAN Mark, Kelsey Battle, Battle Fashions, Inc., or ICAN Clothes Company."

---

[2] *Id.* (¶ 12).

[3] Countercl. – Maryland Action – ECF No. 32 at 5 (¶ 34). Mr. Battle alleges that Battle Fashions, Inc. was administratively dissolved in 2010. *Id.* at 4 (¶¶ 25, 27).

[4] *Id.* at 4 (¶ 31), 6 (¶ 36).

[5] Joint Letter Br. Ex. 5 (subpoena) – ECF No. 19-3 at 13–21.

[6] Joint Letter Br. – ECF No. 19 at 2.

[7] *Id.* at 3.

4. "Documents relating to your participation in the 'collaborative effort' between Under Armour and Steph Curry in the development, design, sale, or promotion of ICAN Products or the "SC" line of products."
5. "Communications between you and Under Armour concerning use of the word, trademark, or phrase 'ICAN' on ICAN Products or the 'SC' line of products, including but not limited to 'I CAN,' 'I CAN AND I WILL,' 'I CAN. I WILL,' 'I CAN DO ALL THINGS,' Philippians 4:13, and any iterations of the word or phrase 'ICAN' or 'I CAN.'"
6. "Communications between you and Jeff Austin, Kate Foley, or other employee at Octagon Worldwide, Inc., concerning use of the word, trademark, or phrase 'ICAN' on ICAN Products, including but not limited to 'I CAN,' 'I CAN AND I WILL,' 'I CAN. I WILL,' 'I CAN DO ALL THINGS,' Philippians 4:13, and any iterations of the word or phrase 'ICAN' or 'I CAN.'"
7. "All agreements between you and Under Armour."
8. "Documents relating to any confusion caused by use of the word, trademark, or phrase 'ICAN' on the 'SC' line of products, including but not limited to 'I CAN,' 'I CAN AND I WILL,' 'I CAN. I WILL,' 'I CAN DO ALL THINGS,' Philippians 4:13, and any iterations of the word or phrase 'ICAN' or 'I CAN.'"
9. "Documents relating to your use of the phrase 'I CAN DO ALL THINGS' and/or Philippians 4:13, including but not limited to communications with fans or business partners."

On July 3, 2018, Mr. Curry objected and responded to Mr. Battle's subpoena, including by serving general and specific objections and responses to the document requests.[8] Broadly speaking, Mr. Curry objected that the subpoena calls for irrelevant documents, made requests that are overbroad, called for duplicative documents that Mr. Battle can obtain from Under Armour,

---

[8] Joint Letter Br. Ex. 6 (objections and responses) – ECF No. 19-3 at 23–33.

and was unduly burdensome in light of Mr. Curry's other commitments.[9] In addition to various other general and specific objections, Mr. Curry made the following specific objections and responses:

1. **Documents concerning the ICAN Mark:** "Curry does not use the ICAN Mark."
2. **Documents concerning Kelsey Battle, Battle Fashions, Inc., or ICAN Clothes Company:** "Curry is unaware of any [communications or documents][10] concerning Kelsey Battle, Battle Fashions, Inc., or ICAN Clothes Company, aside from the document hold letter that he received from Battle dated October 17, 2017."
3. **Communications between you and Under Armour regarding the ICAN Mark, Kelsey Battle, Battle Fashions, Inc., or ICAN Clothes Company:** "Curry is unaware of any communications with Under Armour regarding the ICAN Mark, Kelsey Battle, Battle Fashions, Inc., or ICAN Clothes Company, aside from the document hold letter that he received from Battle dated October 17, 2017."
4. **Documents relating to your participation in the "collaborative effort" between Under Armour and Steph Curry in the development, design, sale, or promotion of ICAN Products or the "SC" line of products:** "Any non-privileged documents responsive to this Request would be in Under Armour's possession; therefore, discovery should be requested from Under Armour, the proper party, not non-party Curry. Curry further objects to this Request to the extent Curry is not responsible for the development, design, sale, or promotion of Under Armour products that may use the motivational phrases, 'I can do all things,' 'I can and I will,' or the word ICAN."
5. **Communications between you and Under Armour concerning use of the word, trademark, or phrase "ICAN" on ICAN Products or the "SC" line of products,**

---

[9] *Id.* at 24–26.

[10] In his response to Request 2, Mr. Curry stated that he is unaware of any communications concerning Mr. Battle, Battle Fashions, Inc., or ICAN Clothes Company, and then later stated (in what was mislabeled as a response to a non-existent Request 10) that he is unaware of any documents concerning those subjects. *Id.* at 27, 32.

ORDER – No. 18-mc-80117-LB          4

**including but not limited to "I CAN," "I CAN AND I WILL," "I CAN. I WILL," "I CAN DO ALL THINGS," Philippians 4:13, and any iterations of the word or phrase "ICAN" or "I CAN":** "Any non-privileged documents responsive to this Request would be in Under Armour's possession; therefore, discovery should be requested from Under Armour, the proper party, not non-party Curry."

6. **Communications between you and Jeff Austin, Kate Foley, or other employee at Octagon Worldwide, Inc., concerning use of the word, trademark, or phrase "ICAN" on ICAN Products, including but not limited to "I CAN," "I CAN AND I WILL," "I CAN. I WILL," "I CAN DO ALL THINGS," Philippians 4:13, and any iterations of the word or phrase "ICAN" or "I CAN":** "It is Under Armour's alleged actions that are at issue with respect to the claims and defenses of this case, not Curry's or his agents' actions; communications responsive to this Request are thus not calculated to reveal any relevant information."

7. **All agreements between you and Under Armour:** "Any non-privileged documents responsive to this Request would be in Under Armour's possession; therefore, discovery should be requested from Under Armour, the proper party, not non-party Curry."

8. **Documents relating to any confusion caused by use of the word, trademark, or phrase "ICAN" on the "SC" line of products, including but not limited to "I CAN," "I CAN AND I WILL," "I CAN. I WILL," "I CAN DO ALL THINGS," Philippians 4:13, and any iterations of the word or phrase "ICAN" or "I CAN":** "Curry is unaware of any potential or actual confusion."

9. **Documents relating to your use of the phrase 'I CAN DO ALL THINGS' and/or Philippians 4:13, including but not limited to communications with fans or business partners:** "Curry objects to this Request as overly broad, unduly burdensome, not proportional to the claims and defenses in this litigation, and indefinite as to scope and time period. Curry has used and quoted verses from the Bible for decades, including writing 'I can do all things' on his shoes even before he began

ORDER – No. 18-mc-80117-LB 5

1   playing college-level basketball at Davidson College and certainly before he began any
2   official relationship with Under Armour."

**ANALYSIS**

**1. Governing Law**

Federal Rule of Civil Procedure 26 provides that:

> [T]he scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. . . . On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]

Fed. R. Civ. P. 26(b)(1), (2)(C)(i). Additionally, Federal Rule of Civil Procedure 45 provides that "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv).

"The Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts." *Lemberg Law LLC v. Hussin*, No. 16-mc-80066-JCS, 2016 WL 3231300, at *5 (N.D. Cal. June 13, 2016) (quoting *In re NCAA Student-Athlete Name Likeness Licensing Litig.*, No. 09-cv-01967 CW (NC), 2012 WL 4846522, at *2 (N.D. Cal. Aug. 7, 2012) (citing *United States v. CBS, Inc.*, 666 F.2d 364, 371–72 (9th Cir. 1982))). "'On a Rule 45 motion to quash a subpoena, the moving party has the burden of persuasion, but the party issuing the subpoena must demonstrate that the discovery sought is relevant.'" *Id.* (quoting *Pers. Audio LLC v. Togi Entm't, Inc.*, No. 14-mc-80025 RS (NC), 2014 WL 1318921, at *2 (N.D. Cal. Mar. 31, 2014)).

**2. Application**

Mr. Curry argues that the discovery that Mr. Battle seeks of him is of little benefit compared to the burden on him and is cumulative or duplicative of discovery that Mr. Battle can or has obtain from Under Armour and other sources. The court agrees.

playing college-level basketball at Davidson College and certainly before he began any official relationship with Under Armour."

**ANALYSIS**

**1. Governing Law**

Federal Rule of Civil Procedure 26 provides that:

> [T]he scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. . . . On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]

Fed. R. Civ. P. 26(b)(1), (2)(C)(i). Additionally, Federal Rule of Civil Procedure 45 provides that "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv).

"The Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts." *Lemberg Law LLC v. Hussin*, No. 16-mc-80066-JCS, 2016 WL 3231300, at *5 (N.D. Cal. June 13, 2016) (quoting *In re NCAA Student-Athlete Name Likeness Licensing Litig.*, No. 09-cv-01967 CW (NC), 2012 WL 4846522, at *2 (N.D. Cal. Aug. 7, 2012) (citing *United States v. CBS, Inc.*, 666 F.2d 364, 371–72 (9th Cir. 1982))). "'On a Rule 45 motion to quash a subpoena, the moving party has the burden of persuasion, but the party issuing the subpoena must demonstrate that the discovery sought is relevant.'" *Id.* (quoting *Pers. Audio LLC v. Togi Entm't, Inc.*, No. 14-mc-80025 RS (NC), 2014 WL 1318921, at *2 (N.D. Cal. Mar. 31, 2014)).

**2. Application**

Mr. Curry argues that the discovery that Mr. Battle seeks of him is of little benefit compared to the burden on him and is cumulative or duplicative of discovery that Mr. Battle can or has obtain from Under Armour and other sources. The court agrees.

United States District Court
Northern District of California

Mr. Battle's litigation is with Under Armour. Mr. Curry is not a party. In light of this fact, Mr. Battle has not established why documents or deposition testimony with respect to Mr. Curry's activities are relevant and not overbroad or unduly burdensome. For example, Mr. Battle seeks documents concerning any iterations of the word or phrase "I CAN" between Mr. Curry and his agents (Request 6) and documents relating to Mr. Curry's use of the phrase "I CAN DO ALL THINGS" and/or the Bible verse Philippians 4:13 in any context, with any person (Request 9), regardless of any connection to Under Armour. This discovery is not related to Mr. Battle's trademark dispute with Under Armour and is overbroad and unduly burdensome on Mr. Curry as a non-party.[11]

Mr. Battle argues that only Mr. Curry can testify as to the importance of "I CAN DO ALL THINGS" to Mr. Curry's brand and argues that this is relevant because "it (a) informs how Under Armour has used the mark; (b) informs how consumers are likely to react to the use of I CAN DO ALL THINGS; (c) is potentially a factor in determining the amount of profits to disgorge; and (d) is a relevant fact in determining what a 'lost royalty' measurement of damages should be."[12] But Mr. Curry's personal views of his brand do not bear on Under Armour's use or non-use of the marks in question, nor do they bear on how customers are likely to react to any such use by Under Armour or on Under Armour's profits. *Cf. Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 412 (N.D. Cal. 2014) (quashing subpoena in trade-dress-infringement claim to third-party co-designer of products, as "[t]he type of information [co-designer] may possess about the *inspiration* for a given design appears marginal to the issues in this action, such as what the design actually is (regardless of its source), and how it is presented to and received by the public") (emphasis added).

Mr. Battle argues that Under Armour has raised an affirmative defense of fair use, and intent is relevant to a fair-use defense. *See* 15 U.S.C. § 1115(4). Mr. Battle argues that he needs discovery

---

[11] As Mr. Curry notes, a search for responsive documents (e.g., a search of the words "I can") would likely yield large numbers of non-responsive and irrelevant documents. Joint Letter Br. Ex. 6 (objections and responses) – ECF No. 19-3 at 26.

[12] Joint Letter Br. – ECF No. 19 at 6.

of Mr. Curry to determine whether Mr. Curry views the phrase "I CAN DO ALL THINGS" as merely a descriptive reference or a Bible verse, which may tend toward fair use, or whether he views it as a trademark or part of his brand. As the party issuing the subpoena, Mr. Battle must demonstrate that the discovery sought is relevant. Mr. Battle has not established, and cites no cases that hold, that Mr. Curry's intent, as opposed to Under Armour's intent, is relevant in litigating a fair-use defense against Under Armour. *Cf. Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1043 (9th Cir. 2010) ("The last factor of the fair use defense asks whether the *defendant* has exercised 'good faith.'") (emphasis added).

Mr. Battle asserts that Mr. Curry is involved in the design of Under Armour products. (Mr. Curry disputes Mr. Battle's characterization of his involvement.) But discovery about Mr. Curry's involvement in the design of Under Armour products is at best of marginal relevance. *Cf. Amini*, 300 F.R.D. at 412 (co-designer's designing of products at issue is of marginal relevance to trademark dispute brought against product retailer). In the end, Under Armour is the one that is selling whatever products that Mr. Curry may or may not have designed, and it is Under Armour against whom Mr. Battle is litigating his trademark dispute.

Mr. Battle asserts that Mr. Curry is personally involved in marketing and promoting Under Armour products and has a contract with Under Armour to do so. But Mr. Battle's litigation is not about marketing or promotion of Under Armour products generally; it is at most about the use of the phrase "I CAN DO ALL THINGS" or any variants in connection with marketing or promotion. Mr. Battle does not claim, or cite to any evidence, that Mr. Curry and Under Armour have a contract or any understanding to use the phrase "I CAN DO ALL THINGS" or any variants in marketing or promoting Under Armour products. Mr. Battle has not established, and cites no cases that hold, that any separate use by Mr. Curry of that phrase, or how Mr. Curry might separately view his brand, can be attributed to Under Amour or bears on claims or defenses in his litigation against Under Armour.

Finally, Mr. Battle asserts that the district court in the District of Maryland retained jurisdiction over the underlying litigation on the theory that a pre-litigation letter that Mr. Battle sent to Mr. Curry caused harm in Maryland. Mr. Battle argues that "[o]nly Curry can testify what

his reaction was to the letter when he received it and whether it actually caused harm in Maryland."[13] But the District of Maryland did not retain jurisdiction based on a theory that the letter caused Mr. Curry harm; it retained jurisdiction based on a theory that the letter to Mr. Curry caused Under Armour harm in Maryland. *Under Armour, Inc. v. Battle Fashions, Inc.*, 294 F. Supp. 3d 428, 434 (D. Md. 2018) ("Under Armour alleges that 'Battle's aim was to interfere with Under Armour's business relationships, which emanate from and are directly affected in Maryland.' . . . Battle's actions went further than merely informing Under Armour of its assertion of its rights but rather allegedly took steps to interfere with Under Armour's business in Maryland."). Mr. Battle can obtain discovery about the harm Under Armour might have suffered from Under Armour itself.

## CONCLUSION

For the foregoing reasons, the court grants Mr. Curry's motion to quash the subpoena.

**IT IS SO ORDERED.**

Dated: August 3, 2018

_____
LAUREL BEELER
United States Magistrate Judge

---

[13] Joint Letter Br. – ECF No. 19 at 6.